The next matter, number 23-1923, Suheil Pena-Torres et al. v. University of Science, Arts and Technology et al. At this time, would counsel for the appellants please come to the podium and introduce himself on the record to begin. Good morning again, your honors, and everyone else here present today. For the record, Counselor Victor M. Rivera-Rios, on behalf of the plaintiffs, appellants, Suheil Pena-Torres and others. Your honor, this case... You're going to reserve time for rebuttal? Yes, excuse me. I'm going to reserve three minutes for rebuttal, your honor. Okay, you may. And let me ask you, before you start your argument, it appears here that there's no threat of open-ended continuity, and if that doesn't exist, your case is doomed. So, if you want to first address that. Well, when we had the argument with the Honorable Judge Young, he obviously brought up the open-ended. We were arguing the closed-ended argument of the pattern of racketeering, which we understand that it was met. When one speaks about the RICO Act, it does say that the pattern needs to be at least two within a ten-year span. So wait, let me... So you did not argue open-ended continuity below? I believe... I mean, we argued both, but when the judge asked about... Because what happened in this case is that, just to give you a bit more background, this was a medical school established in Montserrat. They were only accredited in Montserrat. We're familiar. They provided medical education. We're both familiar with the facts. Yeah. And then the issue is that apparently for more than a decade, they were providing medical education to students in Texas, Florida, and then Puerto Rico starting in 2017, I believe. And my clients were these students that started in early 2017 that were recruited, and they kept going to this school for about a year and a half. And then it was in August 2018 that the can of worms just popped up, let's put it that way, where apparently the organization that does the examination of these students, they do examinations for foreign medical students. And then they were all saying that they were studying the States. And then that's when an alarm was raised around August of 2018, and they started asking all these declarations under oath of all the students. More than 300 students submitted them. Let me just interrupt. I understand those facts. Could you address the continuity issue and address it as close continuity? And obviously the thing is when I get to the August 2018, that's when they took away their accreditations and all the students stopped. So obviously I understand that if it's open-ended, it would be understood that it just keeps continuing until the RICO is filed. But because these students, that's when they realized that they were being duped. That's when they went seeking assistance, FBI, they went to my office. We filed the complaint because I understood, Your Honor. Please answer this question. When did the scheme start and when did it end, according to you? Early 2010s, and it probably stopped with that school in particular in August 2018. The thing is that, Your Honor, it's close continuity. What exactly are you alleging started in 2010? Because you don't dispute that it was at one point a valid foreign medical school for Montserrat.  Is that correct? The problem is that this medical school was only accredited in Montserrat. And it's understood if you're a medical student and you go to Montserrat and take the medical classes there, then you can apply to medical examinations in the States using the ECFMG organization, and you'll submit your materials and then you take that test, which is only for foreign medical students outside the continental United States. The problem here is that they decided to expand to the States in 2010, and they started doing seminars in Texas, Florida, and Puerto Rico. And when that occurred, the students were taking classes and... There was some kind of volcano or something that disrupted... That was their excuse since the beginning and the reason why they did that. But they kept doing that for more than five or ten years. And then... Let me ask you also, before all this happened and there were students in the States, were there any students in the States before they were not allowed to take the medical boards that actually studied in the States that were able to take the boards? It stopped at one point, but... What occurred is a lot of the medical students that before August 2018, they gave them a pass. Even though they had been studying in the mainland United States. Exactly. And they did... Getting the pass. So if it's before 2018, there's technically no recall until 2018 then. Well, the problem is, Your Honor, that... This is not like... No, no, I get it. But when we talk about the RICO Act, it talks about two acts within a span of ten years, correct? And then the close continuity, it says in the... At least in the jurisprudence, if it's only weeks and months, that doesn't apply. But here, we're talking about almost two years. Let me... And we're talking about more than at least ten students that are my clients and more than those ten students.  With... If you could please cite to the record, what is your best record evidence refuting what the school says about the commission's policy change? So what is the evidence that the school was violating the rules before August? Can you give me a specific citation to the record? In the exhibit, and I failed to recall, there is an actual case that was filed in the Pennsylvania District Court. And that was one of the exhibits in our opposition to summary judgment. And in that case, that's where ECFMG filed a suit against the school and against TULP. And they... Oh, no, sorry. It was TULP that filed against ECFMG because they were getting rid of his accreditation. And that's when ECFMG basically determined that they were not going to allow TULP nor his USAT school to send any more students to take this exam. And that was resolved in the Pennsylvania District Court. Is there anything else in the record that you can cite to? With regards to... Can you repeat the question? To the school violating the rules. Well, we're focusing also on the false representations. Basically, in the RICO Act, we're talking about a false representation made by a person to defraud that person or induce that person to pay them. Here, we're talking about mail fraud, wire fraud. We're talking about they made a false representation that the school was accredited in Puerto Rico. The reality is the school was not accredited in Puerto Rico.  You are alleging these false misrepresentations occur... Two years, since early 2017 up to August 2018. Almost two years. So, more than a year and a half, approximately. And this is why we understand that it does apply... The closed continuity does apply here because it's more than months. It was more than six months. It's more than 10 months, 12 months. Since they started making these false representations in early 2017, they induced my clients to pay them. Some of them took loans. Are you alleging that what you perceive to be a misrepresentation, that each misrepresentation is a predicate act or what are you defining? That is correct. Each misrepresentation and each payment made is an act. So, these persons, they were making payments to Colorado. That's where their office is located. From Puerto Rico to Colorado, they took loans, they made electronic payments, and it all went to Colorado. That applies to mail and wire fraud offense. And we understand that per each representation, each payment was an act. So, we're talking about at least 10 clients. They made different payments throughout the year, and those are more than two acts within a 10-year span. And that's why we understand, with all due respect, Your Honor, that it should reverse the decision of the district court because we understand that there's sufficient evidence to infer a pattern of bracketeering. Thank you. Let's hear from opposing counsel. Thank you. At this time, would counsel for the university please introduce himself on the record? Good morning, Charles. Good morning, representing Daniela Cabrera. Our contention in reference to the complaint that has been filed in this case is that there is no way on the record that they can tie any actions on the part of Cabrera in reference to what has been alleged in the complaint. If we examine the complaint, it has 125 paragraphs, the third amended complaint. And only in two of those paragraphs is Cabrera mentioned. Those allegations to Cabrera are very frail. They do not meet the standards of RICO, particularly under a heightened standard of Rule 9. All they allege is that Cabrera is one of the directors and officers of the university's Puerto Rico branch, representing herself as an official of the medical school and that the school is an accredited college in Puerto Rico. That has been rebutted by Cabrera by her own sworn statement on the penalty of perjury, which is Exhibit A to the motion to dismiss that was filed in this case. Cabrera was simply an employee, salary employee, and in no way was she an officer, director, or high-level employee of the university. As the clinical coordinator student, all she did was to monitor interviews with medical schools in Puerto Rico to refer students of the university to their programs. Can I ask you this and I understand? I have a little bit of a hearing problem. All right, let me ask you this question, and it may be better directed to the university, but in the record here, is there evidence that the school was in compliance with the commission? Evidence of what, Your Honor? That the school was in compliance with the commission before August of 2018? Not to my knowledge, but that, you know, insofar as Cabrera, I think that issue is irrelevant. I'll ask it of a different attorney. I understand we have other people here. Cabrera was simply a salary employee until she was notified to vacate the desk, and her duties consisted of coordinating what I stated previously, and she also coordinated voluntary work for the students and performed at times other clinical referral work. In the reply brief, on the matter of appeal, the only reference they make to Cabrera is that Ortiz-Bustillo traveled to the Dominican Republic with Cabrera to talk and recruit prospective students for the school. When confronted with Cabrera's email, Ortiz-Bustillo recognizes that the email address of Cabrera, who was an employee of the university, and she was simply authorized to send information on behalf thereof. He admits that Cabrera sent emails to the appellants attaching U.S.A.T. brochures and other materials and that she would inform the appellants if they were accepted into the program at medical school. They do not rebut that on sworn statement of Cabrera that she was simply a minor employee in salary, and we sustain that the statutory elements of civil reclaim are not present in this case. I'm going to finish this sentence. Finish what you were saying. There's no conduct alleged on the part of Cabrera that will meet the specific requirements of the RICO Act. There's no pattern of racketeering activity that is alleged against her. No predicate acts are set forth in accordance to the statute against Cabrera, and we submit that it was properly the action of the district court in dismissing the complaint was proper, Your Honor. Thank you. At this time, would the next counsel for the appellees please introduce himself on the record? Good morning, Your Honor. If I may please the court, this is attorney Alejandro Belver Espinoza representing Janire Bustillo and Manuel Ortiz Bustillo. In sum, I will address the facts of the complaint directly as to our clients. Second, we will address the fact that there was no personal gain, no acts of fraud, and there was no control of the enterprise. Regarding two matters, regarding the continuity argument under H.J.'s standard, a pattern requires relationship plus continuity. Here, close-ended continuity is absent as a matter of law. The record shows that USAT was recognized institution under ECMFMG, a private entity, unilaterally changed its policy in August 2018, and at least from our knowledge, answering the court's question, we don't have evidence that before August 2018, the university was not in compliance. We do not represent the university. The alleged misconduct is limited to a fourth-month window between that change and the December 2018 cutoff. This court has consistently held that activity spanning only a few months involving a simple scheme and a close group of victims cannot constitute RICO. So as to the personal gain and control of the enterprise, the record is devoid of evidence that they personally committed predicate acts of mail or wire fraud. The third amended complaint only addressed or direct facts as to Ortijo Bustillo. As to a meeting on November 16, there's no evidence directly or indirectly evidence that shows that our clients committed any fraud. There is no allegation as to Bustillo. And Mr. Ortijo and Bustillo were employees acting on behalf of the institution. All tuition payments were directed to corporate accounts in Colorado, not to them other than salary. These two individuals did not receive any type of payment. They also did not maintain control of the enterprise, nor did they conspire to defraud. So as to the court's questions as to the open-ended continuity, the scheme ended by December 31. The alleged scheme ended by December 31 to 2018 when USAT stopped collecting tuition for ECFMG-related classes. There is no risk of repetition because the relationship between the school and these students terminated. It was a finite evidence with no prospect of continuity indefinitely. Thank you. Any questions? Okay, thank you. Thank you. At this time, would counsel for the university please introduce himself on the record to begin? Good morning. May I please the court? I'm Exus Bonilla on behalf of USAT Baldwin. Counsel, if you could start, Judge Montecalvo made a question. I'm sorry. Judge Montecalvo posed a question which was more appropriate for the school. So you represent the school, so if you want to answer that. Sure, Your Honor. I believe that the question was regarding if the license was- The best evidence in the record that the school was in compliance with the commission before August of 2018. The evidence really is that this license was given to the university in 2003. It was never revoked. The university appeared on the listings of the ECFMG, and it was not until the situation of the new policy that was published in 2018 and notice in September that the university, that it changed, and that they had this administrative situation, that they proceed to notify the students and then stop collecting and even reimburse some of the institution that was collected for that period. The reality is that when these students first engage or sign the documents to study there, at that moment, the university had no idea, and this new policy regarding the limitations that were imposed in 2018 in September, the university had no idea about that. So this is a very short period that started between just September, I think, when they received the notice, and December of 2018. So I think if I understand their argument, it's that there were misrepresentations by the school happening to the students going back over years, and that in some ways, the commission's change in policy was the sort of left the students who were students at the time of the change in policy, you know, bereft, but that these acts, which they, I think, argue were part of the conspiracy, happened throughout that. How do you respond to that, and is it simply that, well, the school had a license and it was never revoked? From our position, really, this is not a misrepresentation or a fraud because the reality is that when they enroll, those students that enrolled before the issue of September 2018, they were able to study, they were able to graduate, they were able to get their certification. So there was really no problem or even knowledge from the university that at some point in the future, there was going to be an issue or a new policy. So for us, it's really impossible to think that it can be established in this case, that prior to September, I think, really, there was any kind of misrepresentation because that is not sustained by anything in the record. Just following up, I thought they were saying that the misrepresentation is that you were essentially holding yourself out as an American medical school, a certified American medical school, as opposed to a foreign medical school. Well, Your Honor, maybe that confusion comes from the fact that when originally the license was provided by the government of Montserrat, in 2007 came the authority to move outside of Montserrat because of the natural disaster. So this was not like a scheme or something that they decided to go outside of the original goal of being specifically there. They were allowed to go outside after 2007, the natural disaster, to provide this education outside that location. They were allowed to operate outside of Montserrat because of the natural disaster, but they weren't allowed to hold themselves out as an American medical school. I thought that was sort of the essence of what their allegations were, that that was the misrepresentation. Well, Your Honor, I believe that the records from our part sustains that always you said the representation that has made is that it is a university that has the corresponding license until that moment, until just to try to make it until September 2018 when the policy changes, that is certified by the ECFMG and that students are able to obtain the USMLE and the certification of this entity. That is the representation that was made until that moment, and that representation is true and it was correct. I believe that the issue will be here really if after September 2018 the university continue trying to enroll new students or make representations that were inconsistent with this new policy and situation. And one of the things you mentioned, the school immediately notified the students who were subject to the policy, correct? Correct. Okay, thank you. Any further questions? No. Okay, thank you. Thank you, counsel. At this time, would counsel for the appellant please reintroduce himself on the record. He has a three-minute rebuttal. Yes, for the record, Counselor Victor Rivera-Rios. I was reviewing my notes during the break, and I was making reference to a United States District Court case in eastern Pennsylvania. It's Tulp versus ECFMG case civil number 18-5540, and that case is in the exhibits 13 to 21 of the opposition for summary judgment. And in that case you can see what ECFMG discovered about over 300 students saying that they thought that they were applying, you know, participating in a United States accredited medical school, at least in either Puerto Rico, Florida, or Texas. And going back to what we were talking about earlier, this is a summary judgment argument. This is whether evidence can be inferred in one way or another and create a controversy. And the controversy here that I understand that the jury should determine is whether the closed ending, because the sole reason why Judge Young dismissed the case was because he understood that there was no pattern of racketeering. But we respectfully understand that we did meet the closed ending continuity requisite. We did understand that by the closed ended pattern of racketeering activity is past criminal conduct extending over a substantial period of time. Based on what you just said about the misrepresentations, which is what I got from your brief, are you still saying that the misrepresentations are between August and December? Are you saying that the misrepresentations started before that? No, before that, when I was reviewing the case now, in Exhibit 10 of the opposition for summary judgment, there's evidence that was submitted, which is USAT's, I believe it's their documents about all the payments they received. And in that Exhibit 10 of the opposition, it demonstrates that they've been receiving payments since March of 2017 all the way to early 2019. That is definitely more than a year and a half. We understand that if it's more than a year and a half, it does meet the closed ending continuity requisite under the RICO Act. And as we mentioned, predicate acts earlier are related for RICO purposes when they have the same similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. We're talking about ten, at least in my case, ten clients that talked about all the payments they made throughout more than a year and a half. Payments made from March 2017 and payments made in August 2017 and payments made... Counselor, you know, when we start talking to you, you're supposed to stop talking. Excuse myself, sorry, Your Honor. What do you have to say about the court's determination that you can't be an enterprise at the same time you're racketeering? Sorry, can you repeat the question? That you can't be simultaneously the enterprise and the racketeer. I don't think I understand. The case law says that you can't be an enterprise and a racketeer? Yes, that's what the court's determination was. Well, the thing is, Your Honor, we did sue USAT as an entity, but we did also include all the people involved, which is the enterprise would be the director, Tulp, his wife, Connick. Karen Baldwin was the other one that received the money over in Colorado and then obviously we have Ortiz Bustillo that was here in Puerto Rico who was the president. The court determined that all of those people were acting on behalf of the university, the college, medical school, and therefore they represent the school. They're not independent racketeering. No, they all were in that same enterprise. They were all acting for the similar purpose of making this representation to these students who obtained their money, which was then mailed or was wired to Colorado to pay for a medical education that in the end resulted was not true because they couldn't take the United States medical examination. And that's why we request that because the evidence submitted by the plaintiffs and appellants creates a controversy. We believe a jury should make credibility determinations and this case should go to jury trial, Your Honor. Thank you very much. Thank you.